# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EASTERN SAVINGS BANK, FSB,

                Plaintiff,

                v.

GEORGE PAPAGEORGE, *et al.*

                Defendants.

Civil Action No. 13-1147 (BAH)

Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

       This tort action, seeking over $10 million, is the tenth lawsuit filed in a dispute between the plaintiff and one or more of the four defendants (or their relatives) over a townhouse in Southeast Washington, D.C., that has been ongoing for more than a decade. The plaintiff alleges nine causes of action: (1) violation of the civil RICO statute, 18 U.S.C. § 1962(c), Compl. ¶¶ 96–127; (2) conspiracy to violate the civil RICO statute, 18 U.S.C. § 1962(d), Compl. ¶¶ 128–36; (3) common law fraud, Compl. ¶¶ 137–43; (4) intentional interference with contract against defendants Earl Mitchell ("Mitchell"), George Papageorge ("Papageorge"), and Matt Banks ("Banks"), pertaining to the sale of the townhouse, Compl. ¶¶ 144–53; (5) intentional interference with contract against all four defendants, pertaining to the plaintiff's refinanced mortgage loan on the townhouse, Compl. ¶¶ 154–59; (6) trespass to chattels, Compl. ¶¶ 160–68; (7) unjust enrichment against Defendants Mitchell, Papageorge, and Banks, Compl. ¶¶ 169–73; (8) abuse of process, Compl. ¶¶ 174–80; and (9) conspiracy to defraud the plaintiff, Compl. ¶¶ 181–86. Pending before the Court are motions to dismiss for lack of subject matter jurisdiction, improper service, and failure to state a claim, filed by each of the defendants. *See* Mots.

Dismiss, ECF Nos. 10–13.  For the reasons set forth below, the defendants' motions are granted and this case is dismissed with prejudice.

## I.      BACKGROUND

"This case has so many chapters it makes *War and Peace* look like a short story.  And the saga continues."  *Franklin-Mason v. Mabus*, No. 12-5057, 2014 WL 563583, at *1 (D.C. Cir. Feb. 14, 2014).  The fact that a dispute over what appears to be a typical home mortgage refinancing for $168,000 in 1998 has required at least three published District of Columbia Court of Appeals opinions, *see E. Sav. Bank, FSB v. Pappas*, 829 A.2d 953 (D.C. 2003), *Pappas v. E. Sav. Bank, FSB*, 911 A.2d 1230 (D.C. 2006), *Banks v. E. Sav. Bank*, 8 A.3d 1239 (D.C. 2010); three actions in this Court, *see Mitchell v. E. Sav. Bank, FSB*, 890 F. Supp. 2d 104 (D.D.C. 2012), *Papageorge v. Stuckey*, No. 13-650 (D.D.C. 2013), and the present matter; at least three landlord/tenant proceedings in D.C. Superior Court; and at least one administrative hearing before the D.C. Department of Housing and Community Development, Rental Accommodations Division, is stunning.  The Court is astounded at the amount of judicial resources consumed by this matter, and "given the wearied and stale nature of this dispute," the Court "is loath to extend its shelf life," *Franklin-Mason*, 2014 WL 563583, at *5, particularly since the instant case does not present any colorable claims.  Nevertheless, the Court will provide "a bare-bones procedural précis," *id.* at *1, to provide context for resolution of the pending motions.

The property in question is located at 2507 33rd St. SE in Washington, D.C. (the "Property").  Compl. ¶ 19.[1]  In 1980, the home's owner, Vasiliki Pappas ("Pappas"), acquired title to the property from Aphrodite Pappas ("Aphrodite").  *Id.*  Aphrodite died shortly after Pappas acquired the Property, leaving a number of heirs, and Pappas was "named personal

---

[1] All facts are taken from the Complaint and assumed to be true for the purposes of a motion to dismiss.  *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

representative of" Aphrodite's estate. *Id.* Pappas was removed from this position in 1986 after a District of Columbia Probate Court found her to have "committed numerous improprieties in exercising her fiduciary responsibilities as estate administrator." *Id.*

Twelve years later, in 1998, Pappas defaulted on a $159,000 loan made to her by Citibank Federal Savings Bank, for which she had executed a Deed of Trust on the Property. *Id.* ¶ 20. The same year, the plaintiff extended a new, $168,000 loan to Pappas to settle the Citibank debt, with the Property as collateral. *Id.* ¶ 21. The plaintiff alleges that it was "fraudulently induc[ed]" to grant this loan based, in part, on leases the plaintiff alleges were "generated for the sole purpose of artificially inflating" Pappas' income. *Id.* ¶ 22. Pappas represented that she had three tenants living at the Property, including Defendant Kebede. *Id.* ¶ 21. The plaintiff alleges that none of the three tenants ever lived at the Property. *Id.* ¶ 22. Pappas subsequently defaulted on her loan from the plaintiff and the plaintiff foreclosed. *Id.* ¶ 23.

Soon after the plaintiff's foreclosure action, the parties began suing each other. The initial suits, one initiated by the plaintiff and one initiated by Aphrodite's heirs—none of whom are named defendants in this action, but one of whom is the mother of Defendant Papageorge, *id.* ¶ 19—concerned whether the plaintiff's lien against the Property was superior to the judgment lien obtained by Aphrodite's heirs. *See E. Sav. Bank, FSB v. Pappas*, 829 A.2d at 956; *Pappas v. E. Sav. Bank*, 911 A.2d at 1233. The plaintiff eventually prevailed in two D.C Court of Appeals rulings, *see id.*, thus ending the saga's first chapter.

The saga's next chapter began with the plaintiff's attempt to evict Defendants Kebede and Banks from the Property. Contemporaneously with the first two D.C. Superior Court lawsuits, the plaintiff acquired the Property at a substitute trustees' sale. Compl. ¶ 23. After obtaining title, the plaintiff sought to evict Pappas by initiating a landlord tenant proceeding in

D.C. Superior Court. Compl ¶ 40. Defendants Kebede and Banks intervened claiming right of possession to portions of the property under leases they entered into with Pappas. *Id.* ¶¶ 41–42. The plaintiff alleges that this legal intervention was the beginning of the defendants' alleged RICO scheme, since the plaintiff asserts that Defendants Kebede and Banks never actually lived at the Property. *See id.*

The landlord/tenant court granted the plaintiff possession of the Property with carve-outs for defendants Banks and Kebede, pursuant to their leases. Compl. ¶ 44. In 2002, the plaintiff alleges that Defendants Banks and Kebede sent a letter to the plaintiff offering to vacate the property in return for a $100,000 settlement and ninety days in which to find another place to live. *Id.* ¶ 80. After the plaintiff apparently rejected this settlement offer, Defendant Banks sent a letter to the plaintiff demanding that the plaintiff pay Defendant Banks' utility bill, pursuant to the terms of Defendant Banks' lease. *Id.* ¶ 88.

In 2004, the landlord/tenant court ordered that Defendants Kebede and Banks were to remain undisturbed in possession of the portions of the Property described in their leases. *Id.* ¶ 44. Shortly after that judgment, Defendants Banks and Kebede sent the plaintiff a letter demanding that it undertake certain repairs based on the terms of their leases. *Id.* ¶ 89. Not satisfied with the landlord/tenant court's decision, the plaintiff filed a Writ of Restitution against Defendants Kebede and Banks, which was subsequently denied. *Id.* ¶ 46. So ended the saga's second chapter.

The third chapter began in 2006 when the plaintiff returned to landlord/tenant court by filing two cases against Defendants Kebede and Banks. *See* Compl. ¶¶ 47, 57. Meanwhile, Defendant Mitchell, a former tenant at the Property, brought the plaintiff before an administrative tribunal in the D.C. Department of Housing and Community Development's

Rental Accommodations Divisions, claiming retaliatory eviction and improper registration of a rental property, amongst other claims. *Id.* ¶ 71. These three actions resulted in numerous depositions which, the plaintiff claims, furthered the defendants' RICO scheme, since the deponents allegedly provided false and/or evasive answers. *See id.* ¶ 52, 59. The plaintiff eventually obtained a Writ of Restitution against Defendant Banks and other occupants of the Property, ordering them to provide the plaintiff with possession of the Property. *Id.* ¶ 65. Defendant Banks appealed and had the Writ overturned by the D.C. Court of Appeals. *See Banks v. E. Sav. Bank*, 8 A.3d at 1240. The D.C. Superior Court subsequently ordered the plaintiff to restore Defendant Banks to possession of the Property. Compl. ¶ 69. The plaintiff settled all outstanding claims with Defendant Banks on January 25, 2012. *Id.* ¶ 70.

Shortly thereafter, in 2012, Defendant Mitchell instituted another legal proceeding against the plaintiff claiming, *inter alia*, unlawful eviction and breach of the implied covenant of quiet enjoyment in D.C. Superior Court, an action the plaintiff subsequently removed to this Court. *Id.* ¶ 75. After having its motion to dismiss partially denied in that suit, *see Mitchell v. E. Sav. Bank*, 890 F. Supp. 2d at 105, the plaintiff settled all outstanding claims with Defendant Mitchell on February 4, 2013, Compl. ¶ 77. It was during this litigation that the plaintiff alleges it learned that "Mitchell was never a tenant" at the Property and that Papageorge was allegedly the moving force behind the litigation. *Id.* ¶ 78. The plaintiff does not explain how or when it came to know this information. *See id.*

Chapter four of this saga revolves around the plaintiff's attempts to sell the Property to Boyle and Afomia Stuckey in a transaction that closed on January 2, 2013. *Id.* ¶ 92. Immediately after the sale, and just before the plaintiff settled with Defendant Mitchell, Defendants Mitchell and Papageorge, the latter exercising statutory rights purportedly assigned

by Defendant Banks, sought to assert their right to purchase the Property under D.C. tenant law by sending letters requesting information to the plaintiff. *Id.* ¶¶ 84–86. After receiving no response, Defendant Papageorge sued the plaintiff and the new owners of the Property in District of Columbia Superior Court in March 2013, alleging violations of his statutory rights and that the new owners had committed waste to the property. *Id.* ¶ 93. The plaintiff removed that action to this Court, but the case was subsequently dismissed against the instant plaintiff for lack of proper service, after which the case was remanded to D.C. Superior Court, where it remains pending. *See Papageorge v. Stuckey*, No. 13-650, Order at 1, ECF No. 8.

This brief summary of the last thirteen years of litigation between the parties to the instant matter reveals that the plaintiff has sued the defendants, individually or in some combination thereof, five times—including the instant matter—while the defendants, individually or in some combination thereof, have sued the plaintiff four[2] times—including the pending suit in D.C. Superior Court. *See generally* Compl. The plaintiff has settled with Defendants Banks and Mitchell, but now asks this Court to unwind those settlements because the plaintiff alleges it was fraudulently induced into making those agreements. *See id.* All of the plaintiff's causes of action are based on actions that took place in the course of, or associated with, these nine legal proceedings. *Id.* The defendants have moved to dismiss under Rules 12(b)(1), (b)(3), and (b)(6). Since the Court finds that the plaintiff has failed to state any claims upon which relief could be granted, the remainder of this Memorandum Opinion addresses only those arguments pertaining to the 12(b)(6) motions.[3]

---

[2] A fifth suit, *Pappas v. Eastern Savings Bank*, 911 A.2d 1230 (D.C. 2006), did not involve any of the present defendants but did involve relatives of Defendant Papageorge. *See supra*.

[3] The litigation history among the parties here shows that each side of this dispute has sued the other multiple times in a tit-for-tat pattern suggesting that this suit might have been filed as a counterweight to the pending action in D.C. Superior Court brought by Defendant Papageorge, in accord with the adage that the best defense is a good offense.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); FED. R. CIV. P. 8(a).  A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief."  *Twombly,* 550 U.S. at 555 (alteration in original).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557) (alteration in original).  The Supreme Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly,* 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

## III.   DISCUSSION

The plaintiff's frustration with the ongoing litigation over the Property is palpable in its complaint, but none of the causes of action raised, which are entirely based on the past thirteen years of litigation, present a cognizable claim.  Each claim is considered, and dismissed, below.

### A.   RICO (Counts 1 and 2)

"RICO authorizes civil suits by any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962."  *Edmondson & Gallagher v. Alban Towers Tenants Assoc.* ("*Edmondson*"), 48 F.3d 1260, 1264 (D.C. Cir. 1995) (internal quotations and citation omitted). To establish a violation of § 1962(c)'s prohibition on racketeering activity, the plaintiff must establish "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *W. Assoc. Ltd. P'ship, ex rel. Ave. Assoc. Ltd. P'ship v. Mkt. Square Assoc.* ("*Western Associates*"), 235 F.3d 629, 633 (D.C. Cir. 2001) (quoting *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991)). The plaintiff in a civil RICO suit must also show "that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'"  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  "Proximate cause for RICO purposes . . . requires some direct relation between the injury asserted and the injurious conduct alleged," and a "link that is too remote, purely contingent, or indirect is insufficient."  *Id*. (internal quotations and brackets omitted).  Put another way, "the compensable injury flowing from a RICO violation necessarily is the harm caused by the predicate acts."  *Id*. at 13 (internal quotations and ellipses omitted).

A "pattern of racketeering" activity requires the commission, within a 10-year period, of at least two related predicate acts punishable under certain enumerated criminal statutes.  18 U.S.C. § 1961(5); *Western Associates*, 235 F.3d at 633; *United States v. Eiland*, 738 F.3d 338,

360 (D.C. Cir. 2013). In addition, the Supreme Court has construed the pattern element to require a showing that the racketeering predicates are both related and continuous. *See H.J. Inc. v. N.W. Bell Telephone Co.*, 492 U.S. 229, 239 (1989). The D.C. Circuit has summarized these two additional requirements as follows: the relatedness element requires that the predicate criminal acts "share similar purposes, results, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics," *Western Associates*, 235 F.3d at 633; the continuity element "may be proved by establishing either a closed period of repeated conduct or a threat of future criminal activity." *Id.*

Here, the RICO claim fails because the plaintiff has not plead sufficiently a pattern of racketeering activity nor individual predicate acts, and cannot establish the requisite causation between the predicate acts alleged and the plaintiff's asserted injury.

The complaint alleges that the defendants committed the predicate acts of extortion, 18 U.S.C. § 1951; witness tampering, 18 U.S.C. § 1512; mail and bank fraud, 18 U.S.C. §§ 1341, 1344; and bribery of a witness, D.C. Code § 22-713. The plaintiff does not, however, set out clearly in its RICO claim the specific factual allegations which constitute each of the criminal predicate acts, thereby complicating evaluation of these RICO claim prerequisites. Nevertheless, at base, the plaintiff's RICO claim is that the defendants engaged in various obstructive, abusive, and fraudulent tactics in connection with the multiple suits between the parties, all with "the ultimate aim [] to exert enough pressure on [plaintiff] to extort it into selling [the Property] for a fraction of its fair market value and to secure an undeserved payment in the amount of hundreds of thousands of dollars." Compl. ¶¶ 2, 103.

At the outset, even assuming the acts pleaded by the plaintiff constitute the requisite predicate acts for RICO purposes—which they do not, *see infra*—the plaintiffs have failed to

plead that the defendants have engaged in a "pattern of racketeering activity."  In *Edmondson*, the D.C. Circuit noted that among the factors courts should consider when evaluating whether the plaintiff has established such a pattern are "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity."  48 F.3d 1260, 1265 (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411–13 (3d Cir. 1993)).  The *Edmondson* court noted that when defendants are accused of engaging in "a single scheme, single injury, and few victims," then it is "virtually impossible for plaintiffs to state a RICO claim."  *Id.*

The plaintiff in the instant matter has pleaded a "pattern" consisting of a single scheme (to wrest control of the Property from the plaintiff); a single injury (the plaintiff's financial losses purportedly stemming from the litigation involving the Property); and a single victim (the plaintiff).  The most important of these factors for the *Edmondson* court was the fact that the alleged "pattern" had, as its end result, a "single discrete goal," making the number of predicate acts and the length of time over which the acts occurred far less important.  *Id.*  Here, the plaintiff's claim suffers from the same problem: taking all of the plaintiff's assertions as true, the plaintiff has only alleged that the defendants engaged in acts designed to obtain control of the Property from the plaintiff at a low price, regardless of the amount of time over which those acts were committed.  Thus, the plaintiff has failed to plead a "pattern of racketeering activity" even if the plaintiff had adequately pleaded the required predicate acts.  *See also Western Associates*, 235 F.3d at 634 (dismissing RICO claim where plaintiff alleged single scheme of fraudulent bookkeeping entries, resulting in single injury to single set of victims); *Companhia Brasileira Carbureto de Calcio - CBCC v. Applied Indus. Materials Corp.*, 887 F. Supp. 2d 9, 22 (D.D.C. 2012) (noting RICO pattern requirement "helps prevent ordinary business disputes from

becoming viable RICO claims") (quoting *Western Associates*, 235 F.3d at 637); *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 281–282 (D.D.C. 2011) (dismissing RICO claim where plaintiff's allegations "focus[ed] exclusively on the actions taken by the defendants to foreclose on the plaintiff's property" since such "claims relate[d] to a single alleged scheme, for which he was the sole injured party" and did not constitute "pattern of racketeering activity").

In addition, the plaintiff's factual allegations in support of the claimed predicate criminal acts are insufficient. With respect to the predicate acts of extortion, the plaintiff appears to contend that the defendants' litigation strategies have "created a reasonable fear of harm on the part of [the plaintiff], including fear of economic loss." Compl. ¶ 115. Abusive or sham litigation does not constitute a RICO predicate act. *Bixler v. Foster*, 596 F.3d 751, 758 (10th Cir. 2010); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257–58 (10th Cir. 2003); *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994); *First Pac. Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988); *I.S. Joseph Co., Inc. v. J Lauritzen A/S*, 751 F.2d 265, 267–68 (8th Cir. 1984); *Dias v. Bogins*, No. 97-1612, 1998 WL 13089, at *1 (1st Cir. Jan. 13, 1998); *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001); *Graubarger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1178 (N.D. Cal. 2001). *But see Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick* ("*Hall*"), 726 F. Supp. 1083, 1093–97 (E.D. Mich. 1989).

In the civil context, recognizing litigation as a form of extortion would "transform[ ] a state common-law action into a federal crime." *Pendergraft*, 297 F.3d at 1207–08; *see also J. Lauritzen A/S*, 751 F.2d at 267 (holding that groundless, bad-faith threats to sue "may be tortious under state law" but "declin[ing] to expand the federal extortion statute to make it a crime"). Carried to its logical conclusion, recognition of litigation related activity as a predicate for RICO

violations "would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim." *Deck*, 349 F.3d at 1258. Thus, the vast majority of the plaintiff's litany of woes delineated in the complaint cannot, as a matter of law, form the basis of a RICO complaint, since they are all directly related to ongoing, non-frivolous litigation.[4]

The plaintiff supports it claim that the defendants' engaged in predicate acts of mail and bank fraud by describing various letters sent by some of the defendants seeking repairs of the Property.[5] *See generally* Compl. ¶¶ 79–90, 121–123. Considering the high bar for plaintiffs to plead RICO violations in this Circuit and the explicit caution by the D.C. Circuit in *Western Associates* that "RICO claims premised on mail or wire fraud," as is the case here, "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it," 235 F.3d. at 637, the plaintiff has fallen far short of establishing a RICO claim. The plaintiff has not stated, nor even implied, that the claims made in the letters regarding the lack of toilets, heat, lights, or water in certain areas of the Property were untrue or how those letters meet the standard for mail fraud. *See* Compl. ¶ 69. The plaintiff has offered no details at all as to what actions were taken by the defendants to constitute bank fraud. *See generally* Compl.

The plaintiff's RICO claim based on bribery also must fail. First, the plaintiff cites D.C. Code § 22-713 as the section violated. *Id*. ¶ 110. That code section is not one of the enumerated

---

[4] The plaintiff relies on *Hall*, for the proposition that the filing of lawsuits and notices of *lis pendens* can be "part of a scheme to extort the plaintiff." Pl.'s Opp'n at 29. That case is not binding on this Court and, in any event, is inapposite for at least two reasons. First, the case is distinguishable on its facts since the *Hall* court found a RICO scheme sufficient to overcome motion to dismiss because, in addition to filing lawsuits and a *lis pendens* notice, the plaintiff alleged predicate acts outside the conduct of litigation, such as harassment of third parties, interference with a joint venture, and an attempt to persuade the United States Attorney to investigate the plaintiff. *See Hall*, 726 F. Supp. at 1097. In comparison, the plaintiff here has not alleged that the defendants committed any predicate acts other than conduct in connection with pending lawsuits and filing a *lis pendens* notice. *See generally* Compl. Second, in *Hall* the defendants "knew they were not entitled" to the property at issue, whereas here the defendants have prevailed in several of their legal actions and, in fact, the defendant' rights, if any, to the Property remain a matter of legal dispute. *See* Compl. ¶ 94.

[5] The plaintiff has failed to explain how its general allegations that the defendants caused the Property to deteriorate fit into any of the predicate RICO acts specified. *See* Compl. ¶ 87.

predicate acts that gives rise to a RICO violation. *See* 18 U.S.C. § 1961(1). If the court

construes the complaint as referring to 18 U.S.C. § 201, the federal bribery statute that is a

predicate act under RICO, the plaintiff's claim still must fail. The plaintiff asserts, on

"information and belief" that Defendant Papageorge offered Defendant Banks $100,000 "to

assist him in prosecuting the Papageorge Litigation and any other actions he may lodge against"

the plaintiff, but the pleading does not explain how such an offer constitutes "corruptly giv[ing] .

. . anything of value to any person . . . with intent to influence the testimony under oath or

affirmation of such first-mentioned person as a witness upon a trial, hearing, or other

proceeding," as required by the statute. *See* 18 U.S.C. § 201(b)(3).

  The plaintiff's claims pertaining to the alleged agreement, dated December 10, 2010,

between Defendants Papageorge, Banks, and Mitchell similarly fail, since that agreement does

not, on its face, include or imply the content of any testimony Defendants Banks or Mitchell

might give, nor how the alleged agreement constitutes "*corruptly giv[ing]* . . . anything of

value." *Id.* (emphasis added); *see* Compl. ¶ 35. To the contrary, the Agreement stated that

Defendants Banks and Mitchell "were tenants/occupants of [the Property]" and that the plaintiff

"conducted a wrongful eviction on February 9, 2009 removing Banks, Mitchell, and all other

occupants" from the Property. Compl. ¶ 35. If anything, the December 10, 2010 agreement

undercuts the plaintiff's contention that the litigation engaged in by the defendants was frivolous,

as the agreement indicates a belief by the defendants that they had valid claims against the

plaintiff. *See id.*

  The plaintiff does not plead any factual basis to support a witness bribery charge, since

the plaintiff does not explain what testimony was obtained, what item of value was exchanged,

or what promises were made. *See generally* Compl. For substantially the same reasons, the

plaintiff's witness tampering claims must also fail, since the plaintiff has not alleged that any defendant killed, threatened, corruptly persuaded, intimidated, or intentionally harassed a witness. *See* 18 U.S.C. § 1512. Consequently, since the plaintiff has failed adequately to plead any predicate RICO act under 18 U.S.C. 1961, the plaintiff has failed to state a cause of action for RICO.

Additionally, the plaintiff has failed to plead a RICO injury because the injuries the plaintiff complains of were not directly caused by the predicate acts alleged. The Supreme Court has made clear that in order to plead a RICO injury, the injury alleged must involve a "direct causal connection between the predicate offense and the alleged harm." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 10–11 (2010) (internal quotation marks and citation omitted). Where the set of actions alleged to have caused the harm to the plaintiff was "entirely distinct from the alleged RICO violation," the Court held that the injury was too attenuated to state a RICO claim. *Id.* at 10 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006)). Here, the plaintiff's claimed injuries boil down to economic and reputational harm stemming from the allegedly baseless lawsuits between the instant parties. *See* Compl. ¶¶ 112–15. The reputational harm allegedly suffered by the plaintiff as a consequence of the defendants' various lawsuits is not sufficiently tied to an ascertainable, calculable value or sufficiently tied to the defendants' alleged predicate acts to satisfy the proximate causation standard. *See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 152 (E.D.N.Y. 2005) ("In other words, a plaintiff must show that its injury is to its property, and not, for example, physical, emotional or reputational harm, and that plaintiff's injury is proximately caused by the acts constituting the RICO violation.") (internal quotation marks omitted). Furthermore, the alleged economic damages arose from the plaintiff's expenditure of funds in pursuing or defending

litigation with the defendants. *See* Compl. ¶¶ 112–15. This is exactly the type of injury barred by *Hemi* and *Anza*, since the injury—expending funds on litigation—is wholly removed from the alleged predicate acts—extortion, witness tampering, and witness bribery. Thus, the lack of causation is another fatal flaw in the plaintiff's RICO claim.

The dismissal of Count 1 also results in dismissal of Count 2 alleging a conspiracy to violate RICO. Section 1962(d) makes it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of" RICO. Since the plaintiff has failed to plead a RICO violation under 18 U.S.C. § 1962(a)-(c), its claim under § 1962(d) must fail, because there was no violation in which the defendant could have conspired. *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 27 (D.D.C. 2012) (dismissing claim under § 1962(d) where plaintiffs failed to allege sufficient facts to support violation of other subsection of § 1962).

## B. Fraud (Count 3)

The plaintiff's fraud claim in Count 3 is based on representations made in the course of the ongoing litigation between the parties. *See* Compl. ¶¶ 137–43. To withstand a motion to dismiss for failure to state a claim, a fraud claim must meet the standard set out in Federal Rule of Civil Procedure 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). As this rule makes clear, fraud "'is never presumed and must be particularly pleaded.'" *Lee v. Bos*, 874 F. Supp. 2d 3, 6 (D.D.C. 2012) (quoting *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977), *cert. denied*, 434 U.S. 1034 (1978)). This heightened pleading standard is designed to "discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous

accusations of moral turpitude," as well as "guarantee all defendants sufficient information to allow for preparation of a response." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

The plaintiff must show the following elements for a viable fraud claim: "'(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action . . . taken in reliance upon the representation.'" *Lee*, 874 F. Supp. 2d at 6 (quoting *Bennett*, 377 A.2d at 59); *McCarthy v. Cahill*, 249 F. Supp. 194, 196 (D.D.C. 1966). Thus, a plaintiff "must allege with particularity matters such as the time, location and content of the alleged misrepresentations . . . [and] misrepresented facts." *Id.* It is simply not enough to allege that certain statements or actions were fraudulent without also providing specific information to support the conclusion. The plaintiff has failed to do so here because it has failed to allege with particularity the facts upon which its conclusory allegations of fraudulent misstatements are based.

The plaintiff's complaint is replete with the phrase "on information and belief" when describing the alleged misrepresentations made by the defendants. *See, e.g.*, Compl. ¶¶ 22, 29, 31, 37. The D.C. Circuit has cautioned that Rule 9(b) "pleadings on information and belief are permitted when 'the necessary information lies within defendants' control . . . [but] standards for pleadings on information and belief must be construed consistent with the purposes of Rule 9(b), which attempts in part to 'prevent the filing of a complaint as a pretext for the discovery of unknown wrongs.'" *Kowal v. MCI Comms. Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994) (quoting *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 646 (D.C. Cir. 1989) and *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). For instance, the plaintiff alleges that "on information and belief" Defendant Kebede never "resided in the Property" nor "made any rental payments to

Pappas." Compl. ¶ 22. The complaint does not indicate on what facts this assertion is made, nor explain why such "necessary information lies within the defendant's control." *See Kowal*, 16 f.3d at 1279 n.3. "[T]his circuit provides an avenue for plaintiffs unable to meet the particularity standard because defendants control the relevant documents—plaintiffs in such straits may allege lack of access in the complaint." *Martin-Baker Aircraft Co., Ltd.*, 389 F.3d at 1258; *United States ex rel. Hood v. Satory Global, Inc.*, 946 F. Supp. 2d 69, 79 (D.D.C. 2013) (same); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 98 (D.D.C. 2010) (same). The plaintiff has made no such allegation in its complaint.

Moreover, the plaintiff's claims are at odds with the plaintiff's arguments made in other actions before the courts of the District of Columbia and this Court. In *Mitchell v. Eastern Savings Bank, FSB*, Defendant Mitchell claimed, and the plaintiff did not apparently dispute, that the plaintiff "evicted Mitchell by removing his personal belongings from the Property and changing the locks on the doors to permanently bar [Mitchell's] entry." 890 F. Supp. 2d at 105–06. Although the plaintiff pleads in this case that Defendant Mitchell *falsely* asserted that he had "been living at [the Property] since 1999," Compl. ¶ 72, in *Mitchell* the plaintiff argued that Defendant Mitchell *was* living at the Property, became an at-will tenant when the plaintiff foreclosed on the Property, unlawfully assigned his lease to Defendant Banks when he switched rooms with Defendant Banks, and "thereby became a squatter with no right to any form of notice regarding the eviction," *Mitchell*, 890 F. Supp. 2d at 106. These arguments, and the District Court's findings in *Mitchell*, are, at best, difficult to reconcile with the plaintiff's current arguments that neither Defendant Banks nor Defendant Mitchell ever "were legitimate occupants of the Property." *See* Compl. ¶ 39.[6]

---

[6] The plaintiff's claims also conflict with the findings of the D.C. Court of Appeals in *Banks v. Eastern Savings Bank*, 8 A.3d at 1241, that "Banks became a tenant of the basement unit of [the Property] on January 1, 1999."

Indeed, the plaintiff's complaint boils down to a list of statements made by the defendants over the last thirteen years that the plaintiff believes—for some reason that is not set forth in the complaint or in its briefing—are untrue. Without *any* factual basis for why the plaintiff so believes, the plaintiff has failed to plead fraud with the requisite specificity. Instead, this complaint appears to be the type of claim specifically warned against in *Kowal*, namely, one that is a "pretext for the discovery of unknown wrongs." *Kowal*, 16 F.3d at 1279 n.3. Although a court must take the facts in a complaint as true for the purposes of a motion to dismiss, it need not take conclusory allegations totally divorced from the factual basis for those allegations as true, especially in the context of the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b). *See, e.g.*, *McQueen v. Woodstream Corp.*, 248 F.R.D. 73, 77–78 (D.D.C. 2008) (holding that, under Rule 9(b), "the pleader nevertheless must satisfy his burden by stating with particularity the supporting factual allegations for his claim"); *Bender v. Rocky Mountain Drilling Assocs.*, 648 F. Supp. 330, 336 (D.D.C. 1986) (finding fraud claims based "on information on belief" generally disfavored and inadequate under Rule 9(b)). This is particularly true in this case, since the plaintiff has had thirteen years in which to discover the factual underpinnings to support its allegation of fraud, a period of time that would make it difficult for even the most "sophisticated defrauders to successfully conceal the details of their fraud." *McQueen*, 248 F.R.D. at 78.

Moreover, the plaintiff has failed to plead the necessary element of "detrimental reliance" in relation to any of its fraud allegations. The plaintiff pleads that the defendants made "misrepresentations and/or omissions with the intent of obtaining favorable rulings from the District of Columbia courts and administrative tribunals." Compl. ¶ 139. The D.C. Circuit has noted that "[a] plaintiff may recover for a defendant's fraudulent statement only if the plaintiff

took some action in reliance on that statement." *Aktieselskabet AF 21 November 2001 v. Fame*

*Jeans Inc.*, 525 F.3d 8, 22 (D.C. Cir. 2008). For the most part, the fraud alleged by the plaintiff

was intended to induce reliance by third parties, particularly the "District of Columbia courts,

agencies and officials," and not necessarily the plaintiff. *See* Compl. ¶¶ 139–40. Such reliance

by "third parties cannot, standing alone, satisfy the detrimental reliance element required for

fraud claims under D.C. law." *Busby*, 772 F. Supp. 2d at 276.

The only action the plaintiff asserts it took in reliance on the allegedly fraudulent

statements made by the defendants was to expend money on litigation. *See* Compl. ¶ 141

(stating plaintiff expended "attorneys' fees and costs to defend itself"). "[I]t is far from clear that

the cost of legal services can constitute detrimental reliance for purposes for fraud, given the

American Rule against fee shifting." *Busby*, 772 F. Supp. 2d at 276; *see also Sloan v. Urban*

*Title Servs., Inc.*, 689 F. Supp. 2d 94, 121 (D.D.C. 2010) (holding party asserting fraud "must

provide legal authority in support of his apparent claim that he is entitled to attorneys' fees and

costs and that this alone is sufficient proof of damages to sustain his claim for fraud and

misrepresentation."). This is particularly true where, as here, the plaintiff has had thirteen years

in which to use the discovery tools and other safeguards in the adversarial process to uncover any

fraud by the defendants. The plaintiff's attempt now to recover those funds based on "fraud" is

not a valid claim for detrimental reliance and is independently fatal to the plaintiff's fraud claim.

Since the plaintiff has failed to plead fraud with the requisite particularity, Count 3 is

dismissed.

C.    **Intentional Interference with Contract (Counts 4 and 5) and Abuse of
      Process (Count 8)**

Under D.C. law, to prove tortious interference with contract, the plaintiff must establish

(1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's

intentional procurement of the contract's breach, and (4) damages resulting from the breach. *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012); *Modis, Inc. v. InfoTran Systems, Inc.*, 893 F. Supp. 2d 237, 241 (D.D.C. 2012). Moreover, a defendant's interference "must be improper." *Bowhead Info. Tech. Serv. LLC v. Catapult Tech. Ltd.*, 377 F. Supp. 2d 166, 174 (D.D.C. 2005). In the instant matter, the improper means the plaintiff alleges were used by the defendants pertained to the conduct of litigation. *See* Compl. ¶¶ 144–59. Although "litigation and the threat of litigation are powerful weapons," the filing of litigation is only "wrongful if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith." RESTATEMENT (SECOND) OF TORTS § 767 cmt. c; *see Armstrong v. Thompson*, 80 A.3d 177, 191 (D.C. 2013) (noting § 767 has been adopted in the District of Columbia); *Onyeoziri v. Spivok*, 44 A.3d 279, 291 (D.C. 2012) (same).

"To establish abuse of process, a plaintiff must show a perversion of the judicial process and achievement of some end not anticipated in the regular prosecution of the charge." *Whelan v. Abell (Whelan I)*, 953 F.2d 663, 670 (D.C. Cir. 1992). The essence of the tort is the "motive to subvert the legal process for wrong[ful] ends." *Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d 137, 158 (D.D.C. 2008); *Whelan I*, 953 F.2d at 670 (noting conceptual similarity with malicious prosecution, which requires an action be filed absent probable cause). Thus, an abuse of process claim may be maintained "even where the earlier suit was ostensibly legitimate, so long as the reasons for the suit are found illegitimate." *Neumann v. Vidal*, 710 F.2d 856, 860 (D.C. Cir. 1983). "Mere allegation, however, that a party filed suit to obtain an 'ordinary' settlement is insufficient for a claim of abuse of process." *Whelan I*, 953 F.2d at 670 (contrasting

allegation of pressure for ordinary settlement with intentionally causing severe financial injury through use of legal proceedings).

Under the *Noerr-Pennington* doctrine, the First Amendment generally immunizes the filing of good-faith lawsuits from liability. *Whelan v. Abell* (*Whelan II*), 48 F.3d 1247, 1253 (D.C. Cir. 1995); *Nader*, 555 F. Supp. 2d at 156–57. The exception to this general rule is if the litigation in question is "sham litigation." *Whelan II*, 48 F.3d at 1253 (citing *Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.* ("*Columbia Pictures*"), 508 U.S. 49, 60 (1993)); *Nader*, 555 F. Supp. 2d at 157. Litigation is a "sham" if it meets a two-pronged test set out by the Supreme Court: First, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits;" and second, the litigant's subjective motivation must "conceal[] an attempt to interfere *directly* with the business relationships of a competitor . . . through the use [of] the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Columbia Pictures*, 508 U.S. at 60–61 (emphasis in original). Thus, to fall within the exception to the *Noerr-Pennington* doctrine, a lawsuit "must be a sham *both* objectively and subjectively." *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 526 (2002) (emphasis in original). The second prong of this test need only be considered if the challenged litigation is found to be objectively meritless under the first prong. *Columbia Pictures*, 508 U.S. at 60. The plaintiff bears the burden of establishing that the sham exception applies. *Nader*, 555 F. Supp. 2d at 157 (citing *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253, 262–63 (D.C. Cir. 1981)). This Circuit has extended *Noerr-Pennington* immunity from its original antitrust context to common law torts, including intentional interference with contract and abuse of process. *Nader*, 555 F. Supp. 2d at 157; *Whelan II*, 48 F.2d at 1254 (discussing the limits imposed by the First Amendment on common

law claims).  Other circuits have followed suit.  *See Braintree Lab., Inc. v. Schwarz Pharm., Inc.*, 568 F. Supp. 2d 487, 494–95 (D. Del. 2008) (citing Third and Fourth Circuit cases).

Here, the plaintiff's claims for intentional interference with contract and for abuse of process are predicated upon an assertion that the defendants' litigation against the plaintiff which led to the settlements constitutes "sham litigation."  *See* Compl. ¶¶ 144–59, 174–80.  The plaintiff's claims must fail, since the plaintiff has not established that the defendants' suits were "objectively baseless."  Indeed, Defendant Banks succeeded in obtaining a D.C. Court of Appeals decision overturning a judgment in favor of the plaintiff.  *See Banks v. E. Sav. Bank*, 8 A.3d at 1240.  Similarly, Defendant Mitchell's lawsuit in this Court survived a motion to dismiss before it was settled by the plaintiff.  *See Mitchell v. E. Sav. Bank*, 890 F. Supp. 2d at 105.  The one suit initiated by Defendant Papageorge is still ongoing, Compl. ¶ 94, and the plaintiff has not even alleged that Defendant Kebede ever initiated any suit against the plaintiff.  By definition "[o]ne cannot come before a court and argue that litigation that terminated in one's opponent's favor is objectively baseless."  *Nader*, 555 F. Supp. 2d at 157 (quotations omitted).  Indeed, the Supreme Court has held that "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."  *Columbia Pictures*, 508 U.S. at 61.  Thus, the plaintiff has not shown that the litigation at issue here was meritless or pursued for improper reasons, nor has it overcome the precepts of the *Noerr-Pennington* doctrine to plead a cause of action for intentional interference with contract or abuse of process.[7]

The counts predicated on these allegations of sham litigation, for intentional interference with contract and abuse of process, must fail.

---

[7] The plaintiff argues that *Noerr-Pennington* immunity is inappropriate here because "petitions predicated on fraud or deliberate misrepresentation," are not protected by the doctrine.  Pl's Omnibus Opp'n ("Pl.'s Opp'n") at 6, ECF No. 17 (quoting *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009)).  The plaintiff's argument is unavailing.  As discussed in Part III.B *supra*, the plaintiff has failed to plead fraud with the requisite particularity in the instant case.  Thus, the argument that the lawsuits at issue were "predicated on fraud" also fails.

### D. Trespass to Chattels (Count 6)

A defendant commits a trespass to a chattel by "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Hornbeck Offshore Transp., LLC v. United States*, 563 F. Supp. 2d 205, 212 n.8 (D.D.C. 2008) (citing *Pearson v. Dodd*, 410 F.2d 701, 707 n.30 (D.C. Cir. 1969)). The definition of chattel includes real or personal property; money is excluded. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "chattel" as movable or transferable property and noting "[t]hat money is not to be accounted Goods or Chattels, because it is not of itself valuable . . . Chattels are either personal or real." (quoting THOMAS BLOUNT, NOMO-LEXICON: A LAW-DICTIONARY (1670)). The plaintiff's claim for trespass to chattels is based on the allegation that the defendants "interfered and intermeddled with [the plaintiff's] use and enjoyment of its *funds* that were intended for [the plaintiff's] business purposes and with [the plaintiff's] business reputation and goodwill." Compl. ¶ 161 (emphasis added). In other words, the plaintiff grounds this claim on interference with the use of its funds or its intangible reputation, neither of which are "chattels." Since the plaintiff has not identified a "chattel" that was trespassed upon,[8] this cause of action fails.

### E. Unjust Enrichment (Count 7)

Recovery for unjust enrichment requires a showing that "'a person retains a benefit . . . which in justice and equity belongs to another.'" *United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co., Inc.*, 81 F.3d 240, 247 (D.C. Cir. 1996) (quoting *4934, Inc. v. Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C. 1992)). The existence of a valid contract, however,

---

[8] The plaintiff's complaint states that its trespass to chattels claim is predicated on "expending funds and resources" in response to the various claims and lawsuits filed throughout the ongoing litigation between the parties. *See* Compl. ¶¶ 161–65. In its opposition, the plaintiff attempts to rewrite its complaint by stating the chattel trespassed upon was the plaintiff's right of disposal in the Property. Pl.'s Opp'n at 42. The plaintiff does not make such a claim anywhere in its complaint. *See generally* Compl. In any event, the District of Columbia recognizes trespass to chattels and conversion only in reference to personal property, not real property, *see Youngbey v. District of Columbia*, 766 F. Supp. 2d 197, 219–20 (D.D.C. 2011) (citing *Duggan v. Keto*, 554 A.2d 1126, 1137 (D.C. 1989)), and the plaintiff admits that a "right of disposal" in the Property is a real property right, *see* Pl.'s Opp'n at 42. .

including a settlement agreement, precludes a plaintiff from pleading a cause of action for unjust enrichment. *See Millennium Square Residential Assoc. v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 251 (D.D.C. 2013); *Sununu v. Philippine Airlines, Inc.*, 638 F. Supp. 2d 35, 40 (D.D.C. 2009); *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973); *see also Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996) (holding that "where the parties have a contract governing an aspect of the relation between themselves, a court will not displace the terms of that contract and impose some other duty not chosen by the parties").

Here, the unjust enrichment to the defendants identified by the plaintiff consists of the "settlement agreements reached as a result of the stream of spurious and baseless lawsuits comprising the Property Litigation." Compl. ¶ 170. Putting aside the plaintiff's characterization of the defendants' lawsuits as "spurious and baseless," since they enjoyed some success, *see* Part III.C *supra,* the undisputed fact is that the plaintiff voluntarily entered into the settlement agreements with both Defendant Banks and Defendant Mitchell. Compl. ¶¶ 70, 77. Indeed, the plaintiff asserts that it allegedly learned that Defendant "Mitchell was never a tenant of [Pappas]" in the course of "the Mitchell District Court Litigation," *id.* ¶ 78, yet the plaintiff still settled with Defendant Mitchell after the district court partially denied the plaintiff's motion to dismiss in that suit, *see id.* ¶¶ 75–77.

As for the settlement with Defendant Banks, as stated *supra*, the plaintiff has not adequately pleaded the factual basis for its assertion that Defendant Banks was not a tenant at the Property and, in any event, such a pleading would fly in the face of the District of Columbia Court of Appeals' explicit finding that "Banks became a tenant of the basement unit of [the Property] on January 1, 1999." *Banks v. E. Sav. Bank*, 8 A.3d at 1241. Since the plaintiff has not pleaded with the requisite specificity that Defendants Banks or Mitchell engaged in fraud or

other tortious conduct and, regarding Defendant Mitchell, apparently settled with Defendant Mitchell after learning of these alleged falsehoods, the plaintiff's unjust enrichment claim must fail.

### F.      Conspiracy to Defraud (Count 9)

The plaintiff's conspiracy to defraud claim is based on the allegation that the "Defendants have committed torts against [the plaintiff], including acts of racketeering giving rise to violations of RICO, fraud, interference with contract, trespass to chattels, abuse of process, and unjust enrichment."  Compl. ¶ 182.  As noted *supra*, all of those claims are dismissed.  The conspiracy to defraud claim therefore must also fail, because a civil conspiracy must involve "an agreement—together with an overt act—to do an unlawful act, or a lawful act in an unlawful manner."  *Int'l Underwriters, Inc. v. Boyle*, 365 A.2d 779, 784 (D.C. 1976) (quoting *Edwards v. James Stewart & Co.*, 160 F.2d 935, 947 (D.C. Cir. 1947)); *see also Venture Holdings Ltd. v. Carr*, 673 A.2d 686, 692 n.11 (D.C. 1996) (same); *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 54 (D.D.C. 2001) (same).  Since the plaintiff has not sufficiently pleaded any unlawful act by the defendants, nor any lawful act committed by the defendants in an unlawful manner, Count 9 is dismissed.

### G.      Dismissal With Prejudice

In this Circuit, dismissals with prejudice under Rule 12(b)(6) are disfavored and "warranted only when a trial court determines that the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted); *accord Rollins v. Wackenhut Servs.*, 703 F.3d 122, 132–33 (D.C. Cir. 2012) (Kavanaugh, J. concurring) (noting that this Circuit's "decisions have imposed a 'high' bar for Rule 12(b)(6) dismissals with prejudice," and that such "case law on Rule 12(b)(6) dismissals is not fully aligned with the

Rules" since "[o]n the contrary, Rule 41(b) contemplates that a Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its discretion states otherwise."). This Court must balance the interests of efficiency and the timely resolution of complaints, as required by Federal Rule of Civil Procedure 1, with the liberal pleading standards contained in Rule 15(a) and the "high" *Firestone* standard in this Circuit for dismissal with prejudice. *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) ("The standard for dismissing a complaint with prejudice is high"). In keeping with these various requirements, dismissal with prejudice is warranted here since there are no allegations in the plaintiff's fifty-eight page complaint, based on facts gathered over thirteen years of litigation, that could give rise to legal liability under any of the theories advanced by the plaintiff. Quite simply, the plaintiff's causes of action are based upon a litany of complaints that should have been dealt with during the course of the litigation in which they arose, rather than yielding yet another complaint in this litigation saga. Moreover, the plaintiff has not sought leave from this Court to amend its complaint and, as the D.C. Circuit has noted, it can "hardly [be] an abuse of discretion for the District Court not to have afforded [the plaintiff] such leave *sua sponte*." *Kowal*, 16 F.3d at 1280; *see also United States ex rel. Batiste v. SLM Corp*., 659 F.3d 1204, 1211 (D.C. Cir. 2011) (finding no abuse of discretion in dismissing suit with prejudice when the plaintiff "never asked for leave to amend his complaint in the district court"). The plaintiff's complaint is therefore dismissed with prejudice.

## IV.    CONCLUSION

Despite today's Memorandum Opinion, litigation among at least some of these parties will continue, since there remains a pending case before D.C. Superior Court. *See* Compl. ¶ 94. Nevertheless, the chapter of the saga before this Court ends today. The defendants' motions to

dismiss under Federal Rule of Civil Procedure 12(b)(6) are granted and this matter is dismissed,

in its entirety, with prejudice.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 10, 2014

_____
BERYL A. HOWELL
United States District Judge